1
MARK A. SCOGGINS
LAW OFFICE OF F. MATTHEW SMITH, LLC
2
2nd Floor, MIC Building, Chalan Monsignor Guerrero
San Jose Village
3
P.O. Box 501127
Saipan, MP 96950-1127
4
Telephone Nos.: (670) 234-7455 / 7427
Facsimile No.:    (670) 234-7256
5
Attorney for the Plaintiff.

FILED
Clerk
District Court

JUN 01 2016

for the Northern Mariana Islands
By_____
(Deputy Clerk)

6

7

## THE UNITED STATES DISTRICT COURT
## FOR THE
## NORTHERN MARIANA ISLANDS

8

| | |
|---|---|
| MANUEL ALVAREZ, | Civil Action No. CV 16-00014 |
| Plaintiff, | |
| vs. | **COMPLAINT and DEMAND FOR JURY TRIAL** |
| SEAHORSE, INC., and SHAO WALKER, | |
| Defendants. | |

14
## Jurisdiction and Venue

15      1.      This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C.

16      §1331, and supplemental jurisdiction pursuant to 28 U.S.C. §1367.  Venue is proper in this district

17      under 28 U.S.C. 1391(b)(1) and (2).

18      ## The Parties

19      2.      Plaintiff Manuel Alvarez ("Mr. Alvarez") is a resident of Saipan.

20      3.      Defendant Seahorse, Inc. ("Seahorse") is a corporation organized under the laws of

21      the Commonwealth of Northern Mariana Islands.

22      4.      Defendant Shao Walker ("Ms. Walker") is a resident of Saipan.

23

24      ## The Facts

25      5.      In 2005, Seahorse was incorporated and established as a business primarily engaged

26      in tourism and marine sports in Saipan.

27      6.      Mr. Alvarez contributed equipment, labor, expertise, and experience to Seahorse's

28

*Complaint -- Page 1 of 7*

ORIGINAL

1 establishment.

2       7.     Ms. Walker contributed money.

3       8.     At the time of the incorporation of Seahorse, Mr. Alvarez and Ms. Walker agreed that
4 Mr. Alvarez would receive half of the shares in the corporation after ten years of operation.

5       9.     From the time of incorporation, Mr. Alvarez was an employee of Seahorse.

6       10.    Seahorse is and always has been engaged in interstate commerce such as marketing
7 and bookings over the internet, transporting customers and equipment through channels of interstate
8 commerce, and accepting credit and debit card payments over interstate and international
9 telecommunications systems.

10       11.    Seahorse has annual sales in excess of $500,000 per year.

11       12.    Aspects of Mr. Alvarez's work for Seahorse concerned matters affecting interstate
12 commerce such as marketing and bookings over the internet, transporting customers and equipment
13 through channels of interstate commerce, and swiping credit and debit card transactions over
14 interstate and international telecommunications systems.

15       13.    Seahorse operates from roughly sunup to sundown three hundred and sixty-five days
16 a year.

17       14.    For the entire time of his employment with Seahorse, Mr. Alvarez worked at least
18 twelve hours per day, six days a week, and around six hours every Sunday.

19       15.    For the first nine years of his employment, it was agreed that Mr. Alvarez would be
20 paid $35 per day, but that he would actually only receive $25 per day with the remaining $10 per day
21 held back for exigencies such as medical travel or other unexpected expenses.

22       16.    Mr. Alvarez did not always actually receive the $25 per day payment.

23       17.    For roughly the final year of Mr. Alvarez's employment, Mr. Alvarez was paid $400
24 per week.

25       18.    In some months, Mr. Alvarez would also receive an additional $200 for work
26 performed for two companies related to Ms. Walker and Seahorse, Saipan Aqua World and Kuraling
27 Dive.

28

19.    At no time during his employment was Mr. Alvarez paid enough to properly compensate him for the number of hours worked, and he was always paid below the minimum wage.

20.    At no time during his employment was Mr. Alvarez properly paid overtime.

21.    Seahorse's and Ms. Walker's refusal to pay proper wages and overtime was willful.

22.    Throughout the entirety of Mr. Alvarez's employment, Seahorse and Ms. Walker failed to pay withholding and Social Security for Mr. Alvarez.

23.    In February of 2015, after roughly ten years of Seahorse business activity, Mr. Alvarez asked Ms. Walker for half of the Seahorse shares as she had promised. Ms. Walker refused to transfer the shares as promised.

24.    Ms. Walker's failure to transfer the Seahorse shares is a breach of contract.

25.    In late 2015, Mr. Alvarez became ill and needed medical attention off-island.

26.    The $10 payment that had been withheld from Mr. Alvarez's pay was intended to cover expenses like off-island medical referral.

27.    When Mr. Alvarez requested that the company pay, persons working on behalf of Ms. Walker attempted to force Mr. Alvarez to sign over title to certain property in exchange for the travel expenses.

28.    Seahorse and Ms. Walker otherwise refused to provide the travel expenses to Mr. Alvarez.

29.    The refusal to pay travel expenses was also a breach of contract.

30.    Mr. Alvarez twice traveled to the Philippines at his own expense for medical checks and treatment.

31.    When Mr. Alvarez returned from the first trip, he found that Ms. Walker had changed the locks on Mr. Alvarez's living quarters and personal office, converting all of the personal property belonging to Mr. Alvarez, and effectively making him homeless.

32.    Despite demands, Ms. Walker still has not allowed Mr. Alvarez to return to his living quarters and office, nor has she allowed him to retrieve his property.

33.    Ms. Walker and Seahorse used the profits and proceeds from Seahorse to start or

1  purchase several other corporations and businesses including Regel Corporation and the Iron Horse

2  Machine Shop, Kuraling Dive, Saipan Aqua World, and the Low Tide Beach Bar & Grill.

3      34.    Mr. Alvarez contributed equipment, labor, expertise, and experience to all of these

4  other businesses.

5      35.    It was agreed and understood between Ms. Walker and Mr. Alvarez that he was an

6  equal partner in all of these other businesses.

7      36.    Ms. Walker now refuses to recognize Mr. Alvarez's interests in any of these

8  businesses, and this is another breach of contract.

9      37.    Seahorse, Regel Corporation and the Iron Horse Machine Shop, Kuraling Dive,

10  Saipan Aqua World, and the Low Tide Beach Bar & Grill are the alter-egos of Ms. Walker and of

11  each other, and Ms. Walker and all of these companies consistently fail to follow corporate

12  formalities, and also regularly and improperly commingle and share funds, equipment, labor,

13  materials, and etc. between and among each other.

14      38.    Seahorse and/or Regel Corporation and the Iron Horse Machine Shop and/or Kuraling

15  Dive, and/or Saipan Aqua World, and /or the Low Tide Beach Bar & Grill, and /or Ms. Walker have

16  converted numerous items of property belong to Mr. Alvarez, including but not limited to cash, an

17  antique Chrysler automobile, power boats and boating equipment, a catamaran, several jet skis,

18  heavy equipment, the property in Mr. Alvarez's living quarters and office, and other items to their

19  own use and benefit.

20      39.    Mr. Alvarez has demanded that the property be returned, but he has received no

21  response.

22      40.    All of Defendants acts and omissions as alleged herein were willful and intentional.

23  **First Cause of Action – Payment Below Minimum Wage in Violation of the FLSA**

24      41.    Paragraphs 1 through 40 of this Complaint are reallleged and incorporated herein by

25  this reference.

26      42.    The wages paid to Plaintiff by Defendant(s) were below the minimum wage required

27  by the Fair Labor Standards Act, 29 U.S.C. §206.

28

1

2

**Second Cause of Action – Unpaid Overtime in Violation of FLSA**

3    43.    Paragraphs 1 through 42 of this Complaint are reallleged and incorporated herein by

4  this reference.

5    44.    Defendant(s) failed to properly pay Plaintiff for work in excess of forty (40) hours

6  per week in violation of the requirements of the Fair Labor Standards Act, 29 U.S.C. §207.

7    **Third Cause of Action – Retaliation in Violation of the FLSA**

8    45.    Paragraphs 1 through 44 of this Complaint are reallleged and incorporated herein by

9  this reference.

10    46.    Defendant(s) terminated Plaintiff's employment in retaliation for Plaintiffs complaints

11  and assertion of rights in violation of the anti-retaliation provisions the Fair Labor Standards Act,

12  29 U.S.C. §215(a)(3).

13    **Fourth Cause of Action – Violation of CNMI Wage and Hour Act**

14    47.    Paragraphs 1 through 46 of this Complaint are reallleged and incorporated herein by

15  this reference.

16    48.    Defendant(s) failure to properly pay Plaintiff for work in excess of forty hours per

17  week violates the requirements of the CNMI Minimum Wage and Hour Act, 4 CMC §9222.

18    **Fifth Cause of Action – Breaches of Contract**

19    49.    Paragraphs 1 through 48 of this Complaint are reallleged and incorporated herein by

20  this reference.

21    50.    The promise between Mr. Alvarez and Ms. Walker under which Mr. Alvarez was to

22  receive one half of the shares in Seahorse was a contract supported by good and valuable

23  consideration.

24    51.    Ms. Walker breached this contract by refusing to transfer and recognize Mr. Alvarez's

25  ownership interest in Seahorse.

26    52.    The promises between Mr. Alvarez and Ms. Walker through which Mr. Alvarez was

27  to receive one half interests in Regel Corporation and the Iron Horse Machine Shop, Kuraling Dive,

28

1    Saipan Aqua World, and the Low Tide Beach Bar & Grill were contracts supported by good and

2    valuable consideration.

3          53.     Ms. Walker breached these contract by refusing to transfer and recognize Mr.

4    Alvarez's ownership interests in these companies.

5          54.     The promise between Seahorse, Ms. Walker, and Mr. Alvarez whereby $10.00 of Mr.

6    Alvarez's daily pay was withheld for exigencies such as travel expenses was a contract supported

7    by good and valuable consideration.

8          55.     Ms. Walker breached this contract by failing to pay for Mr. Alvarez's travel expenses.

9                            **Sixth Cause of Action – Conversion**

10         56.     Paragraphs 1 through 55 of this Complaint are reallleged and incorporated herein by

11    this reference.

12         57.     As described above, Ms. Walker and Seahorse, and their alter-egos, have intentionally

13    exercised dominion and control over chattels belonging to Mr. Alvarez, and have completely

14    interfered with Mr Alvarez's right to control the property.

15         58.     Mr. Alvarez has been damaged by conversion of the property.

16                                  **Prayer for Relief**

17    WHEREFORE, Plaintiff prays the Court grant the following relief:

18         1.      Damages for regular wages paid below the minimum wage, unpaid overtime in an

19    amount to be proven at trial.

20         2.      Liquidated damages as allowed by statute.

21         3.      Damages for breaches of contract in an amount to be proven at trial.

22         4.      Damages for conversion in an amount to be proven at trial.

23         5.      Incidental and consequential damages.

24         6.      Punitive damages.

25         7.      Reasonable attorneys' fees and costs as allowed by statute.

26         8.      Such other relief as the Court deems just and proper.

27    Respectfully submitted this June 1, 2016.

28

MARK A. SCOGGINS
Attorney for Manuel Alvarez

## DEMAND FOR JURY TRIAL

In accordance with Fed. R. Civ. P. 38(b)(1), Plaintiff Manuel Alvarez hereby demands a trial by jury as to all issues.

MARK A. SCOGGINS
Attorney for Manuel Alvarez

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Complaint -- Page 7 of 7*