F I L E D
Clerk
District Court

SEP 08 2017

for the Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| MANUEL ALVAREZ,<br><br>          Plaintiff/Counterclaim-Defendant,<br><br>vs.<br><br>SEAHORSE INC. AND SHAO WALKER,<br><br>          Defendants/Counterclaim-Plaintiffs. | Case No.: 16-cv-00014<br><br><br>DECISION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF/COUNTERCLAIM-DEFENDANT'S MOTION TO DISMISS COUNTERCLAIMS |

Before the Court is counterclaim-defendant Manuel Alvarez's motion to dismiss the counterclaims. (ECF No. 8.) For the reasons set forth below, the motion is granted in part and denied in part.

## I.    BACKGROUND

Plaintiff/counterclaim-defendant Manuel Alvarez ("Alvarez") filed this FLSA suit against defendants/counterclaim-plaintiffs Seahorse, Inc. ("Seahorse") and Shao Walker ("Walker") pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), also bringing several claims under the laws of the Commonwealth of the Northern Mariana Islands pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction).

Alvarez is a resident of Saipan, and alleges he was an employee of Seahorse from 2005 to 2016. (Compl. ¶ 9, ECF No. 1.) Defendants admit that Alvarez was a shareholder at the time that Seahorse was incorporated, and that he was also a corporate officer (Vice-President) of Seahorse

from February 2005 to January 2016, but deny that he was an employee. (Answer ¶¶ 9, 14, ECF No. 5.)

Seahorse is a business engaged in tourism and marine sports in Saipan. (Compl. ¶¶ 6-7.) Walker cofounded Seahorse with plaintiff, and is the current owner of the corporation. (*See* Compl. ¶¶ 5, 7; Answer ¶¶ 7, 14.)

**Procedural Background**

Plaintiff filed a complaint on June 1, 2016, alleging that defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*., the CNMI Wage and Hour Act, and are liable for breach of contract, and conversion. (Compl., ECF No. 1.)

Defendants were served with summons on June 2, 2016. (Summons, ECF Nos. 2, 3.)

On June 24, 2016, plaintiff filed a motion for entry of default for failure to file an answer or respond to the complaint. (Pl's. Mot. for Default J., ECF No. 4.) That same day, defendants filed an answer with affirmative defenses and seven counterclaims. (Answer and Countercls., ECF No. 5.) On September 8, 2016, defendants filed a brief in opposition to the motion for entry of default, and a cross-motion to dismiss the complaint. (Defs'. Cross-Mot. to Dismiss, ECF No. 14.)

On August 11, 2016, plaintiff filed a motion to dismiss the counterclaims. (Pl's. Mot. to Dismiss Countercls., ECF No. 8.) On August 25, 2016, defendants filed a motion for an extension of time to file their brief in opposition to the motion to dismiss the counterclaims, requesting one additional hour of time on that same day to file. (Defs'. Mot. for Extension of Time, ECF No. 11.) The brief in opposition was filed approximately two hours later on August 26, 2016. (Defs'. Br. in Opp'n, ECF No. 12.) Plaintiff filed a reply brief on September 1, 2016. (Pl's. Reply Br., ECF No. 13.)

On September 8, 2016, the Court heard oral argument on the motion for entry of default, motion for an extension of time, and motion to dismiss the counterclaims. (Mins., ECF No. 15.) At the hearing, plaintiff's counsel moved to withdraw the motion for entry of default, and the Court granted the motion. (*See id*. at 1.) The Court also granted the motion for an extension of time to file the brief in opposition, and accepted the brief for consideration on the merits. (*Id*.) Counsel for defendants agreed not to pursue the cross-motion to dismiss the complaint.[1] The Court thereafter took the motion to dismiss the counterclaims under advisement. (*Id*. at 1-2.)

**Facts As Alleged in the Complaint**

The following background is drawn from the complaint, taking the well-pleaded allegations as true, as required at the motion to dismiss stage.

In 2005, plaintiff and defendant Walker cofounded Seahorse. At this time, they agreed that plaintiff would receive fifty percent of the shares of the corporation after ten years, and in the interim, plaintiff would be an employee of Seahorse, working at least twelve hours per day, six days per week, and six hours on Sundays. (Compl. ¶¶ 5, 8, 9, 14.)

Between 2005 and 2014, as an employee, the parties agreed that plaintiff would receive thirty-five dollars per day, with twenty-five dollars paid out and ten dollars withheld for "exigencies such as medical travel or other unexpected expenses." (Compl. ¶ 15.) Despite this agreement, plaintiff did not receive the twenty-five dollars each week. (*Id*. ¶ 16.) In the final year of his employment, 2015, plaintiff received four hundred dollars per week, and occasionally received an additional two hundred dollars for work performed for Saipan Aqua World and Kuraling Dive, two entities affiliated with defendant Walker. (*Id*. ¶¶ 17, 18.)

---

[1] For clarity of the record, because defendants informed the Court on September 8, 2016, that they would not be pursuing dismissal of the complaint based on lack of personal jurisdiction, the motion (ECF No. 14) is denied as moot.

During this period, plaintiff also performed work for Regel Corporation, the Iron Horse Machine Shop, and the Low Tide Beach Bar & Grill, all of which are alter-egos of Walker. (Compl. ¶ 33.) In exchange for his work, plaintiff was to become an equal partner in these businesses. However, he was not compensated or made partner, and these businesses, which are not named parties in this action, "converted numerous items of property belonging to [plaintiff]." (*Id*. ¶¶ 33-38.)

In February 2015, plaintiff demanded that Walker transfer the agreed-on fifty percent of shares in Seahorse to him, and she refused. Additionally, in late 2015, plaintiff fell ill and requested some of the withheld funds for his medical use, but defendants refused. Plaintiff traveled to the Philippines to obtain medical treatment, and upon his return, discovered that defendant Walker had "changed the locks on [his] living quarters and personal office." (Compl. ¶¶ 23-31.)

After these events transpired, plaintiff filed a complaint against defendants, alleging six causes of action: (1) Payment below minimum wage in violation of the FLSA; (2) Unpaid overtime in violation of the FLSA; (3) Retaliation in violation of the FLSA; (4) Violation of CNMI Wage and Hour Act; (5) Breaches of contract; and (6) Conversion. (Compl. ¶¶ 41-58.)

**Facts As Alleged in the Answer and Counterclaims**

The following background is drawn from the answer, taking the well-pleaded allegations as true for purposes of the motion to dismiss the counterclaims.

In February 2005, defendant Walker invested $30,000 in Seahorse in exchange for thirty percent of the shares in the corporation, and plaintiff retained the remaining seventy percent of shares. Walker was named President and plaintiff was named Vice-President, a title he retained until 2016. (Countercls. ¶ 19.) At no time was plaintiff an employee of Seahorse, as evidenced

by his 2009 bankruptcy filings, which stated he was a "self-employed handyman," and had no shares or interests in any businesses, including Seahorse. (Countercls. ¶¶ 25-41.)

Following the initial investment in Seahorse in 2005, Walker began paying one of plaintiff's personal debts and, between 2006 and 2007, gave plaintiff a personal loan of $5,000. (Countercls. ¶¶ 22-23.) On February 12, 2007, Alvarez transferred fifty percent of the total shares in Seahorse to Walker, and he retained a twenty percent stake in the corporation. (*Id*. ¶ 24.) Around March 2007, Walker contributed an additional $37,000 to Seahorse for the purchase of equipment, including five jet skis, and for operating capital. In exchange, plaintiff transferred his remaining shares to Walker. (Countercls. ¶¶ 19-21.)

While plaintiff served as Vice-President of Seahorse, Seahorse provided him with a number of financial benefits at his request or demand. (*See* Countercls. ¶ 48.) Despite these benefits, beginning in August 2014, plaintiff "became increasingly belligerent in his demands for money from the defendant Seahorse," and, after being refused additional stipend funds, threatened to report illegal activity related to the hiring of foreign workers, attempted to prevent employees from working, and harassed customers by photographing them and calling them illegal workers. (*Id*. ¶¶ 49-55.)

Following these incidents, plaintiff sent a demand letter to Walker and Seahorse for $5,000 and fifty percent of the shares in Seahorse. (Countercls. ¶¶ 56-57.) Seahorse refused, stating he was not entitled to any shares because he transferred his ownership interest in 2007, that Seahorse had already paid for his ticket to the Philippines for medical care and paid for his medical insurance, and also offered to give him a cash loan, which Alvarez refused. (*Id*. ¶¶ 58-60.)

In 2015, plaintiff registered equipment owned by Seahorse, including eight jet skis and five boats, under his name. (Countercls. ¶ 65; Ex. I, ECF No. 5-9.) Further, plaintiff registered a

Toyota vehicle in his name despite the fact that it was owned by Walker.  (Countercls. ¶ 65; Ex. J, ECF No. 5-10.)  After this, in January 2016, plaintiff was removed as Vice-President by corporate board resolution.  (Countercls. ¶ 64.)

Based on plaintiff's actions, defendants have brought seven counterclaims against him:  (1) Unjust enrichment; (2) Abuse of Process; (3) Breach of Fiduciary Duty; (4) Tortious Interference with Contract; (5) Intentional Interference with Prospective Economic Advantage; (6) Conversion; and (7) Declaratory Judgment.  (Countercls. ¶¶ 66-127.)

## II.  STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a pleading "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  In other words, the pleading must contain "more than labels and conclusions"; the "[f]actual allegations must be enough to raise a right to relief above a speculative level." *Eclectic Props. East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).  Thus, a court must "identify pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then consider whether the well-pleaded allegations could "plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 678-79).  If the well-pleaded allegations "are merely consistent with a defendant's liability," the plausibility threshold has not been satisfied. *Id.* (quoting *Iqbal*, 556 U.S. at 678.)  But "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### III. ANALYSIS

Alvarez argues that Walker and Seahorse have failed to state a claim under Fed. R. Civ. P. 12(b)(6), and also argues that Walker lacks standing to assert five of the counterclaims. (Pl's. Mot. to Dismiss Countercls. 2.)

### A. Whether Walker Has Standing to Assert Counterclaims

Alvarez argues that Walker lacks standing to bring counterclaims for unjust enrichment, breach of fiduciary duty, tortious interference with contract, interference with prospective economic advantage, and conversion. (Pl's. Mot. to Dismiss Countercls. 2.) Seahorse and Walker concur with this argument, except that they argue Walker has standing to bring a conversion counterclaim as to the Toyota Tacoma because she owns the vehicle that Alvarez allegedly continues to use without permission. (Defs'. Br. in Opp'n 1-2, 10.) No party addresses whether Walker has standing to bring the declaratory judgment counterclaim.

Because the parties concur that Walker may not bring counterclaims for unjust enrichment, breach of fiduciary duty, tortious interference with contract, and interference with prospective economic advantage, the Court grants Alvarez's motion to dismiss the unjust enrichment, breach of fiduciary duty, tortious interference with contract, interference with prospective economic advantage, and conversion (as to Seahorse's property) counterclaims as to Walker. The following merits analysis of these counterclaims will be restricted to Seahorse.

Walker has standing to bring a claim for conversion of the Toyota Tacoma, for the reasons set forth below in section G. Because none of the parties address the counterclaim for a declaratory judgment, and because the counterclaim for a declaratory judgment lacks merit, as set forth in section H below, it is unnecessary for the Court to address whether Walker has standing to assert

this counterclaim. Accordingly, the substantive analysis of whether Seahorse and Walker have stated a claim for the second, sixth, and seventh causes of action will proceed as to both defendants.

**B. First Cause of Action: Unjust Enrichment**

Alvarez argues that Seahorse's unjust enrichment counterclaim should be dismissed because Seahorse has failed to satisfy all of the elements of unjust enrichment. (Pl's. Mot. to Dismiss Countercls. 3.) Seahorse contends that this argument lacks merit. (Defs.' Br. in Opp'n 2.)

A cause of action for unjust enrichment requires proof of the following elements: "(1) the defendant was enriched; (2) the enrichment came at the plaintiff's expense; and (3) equity and good conscience militate against permitting the defendant to retain what the plaintiff seeks to recover." *Saipan Air, Inc. v. Stukes*, Case No. 12-cv-00015, 2014 WL 6978488, *15 (D. N. Mar. I. 2014) (citing *Syed v. Mobil Oil Mar. I., Inc.*, Case No. 2011-SCC-0010-CIV, 2012 MP 20, ¶ 41 (N. Mar. I. 2012)); *see also* RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 1 (2011) ("A person who is unjustly enriched at the expense of another is subject to liability in restitution.").

Alvarez first argues that he was not enriched because some of the items Seahorse listed as benefitting Alvarez are actually benefits to third parties, and there must be a "direct line" between the plaintiff and defendant, citing *Saipan Air*, 2014 WL 6978488, at *15. (Pl's. Mot. to Dismiss Countercls. 3; Pl's. Reply Br. 2-3.) Seahorse argues that there was a "direct line" because most of the benefits "were conferred directly on the plaintiff himself." (Defs.' Br. in Opp'n 2.) In fact, according to Seahorse, the benefits were "provided to the *plaintiff* at his request/demand," and all of the money involved were "monies given *directly* to the plaintiff that the[*sic*] then used to pay for the specific items listed therein." (*Id*. at 4 (emphasis in original).)

The Commonwealth "does not expressly require the benefit to have been directly conferred on the defendant," but "Commonwealth case law suggests that a direct line for the benefit from the plaintiff to the defendant is needed." *Saipan Air*, 2014 WL 6978488, at *15. At a minimum, plaintiff "must show that the defendant "received the disputed funds." *Id.* (citing *Olaitiman v. Emran,* Case No. 2007-SCC-0020-FAM, 2011 MP 8 ¶ 15 (N. Mar. I. 2011)).

Here, Alvarez does not dispute that he received the funds, instead he focuses on how he received the funds and how they were used. (*See, e.g.*, Pl's. Mot. to Dismiss Countercls. 3 (cash from Seahorse given to Alvarez to be used for daughter's engagement gift; cash for payment on his son's motorcycle race; cash deposited in his daughter's bank account for marriage gift).

That Alvarez directly handled and received the funds from Seahorse at some point—except those that were sent directly to his daughter's bank account—but did not retain them for himself does not prevent the Court from finding a benefit was conferred on him. The CNMI Code "directs CNMI courts to the Restatements for guidance" on restitution and unjust enrichment, *Boeing Co. v. Leo A. Daly Co.*, Case No. 13-cv-00027, 2014 WL 12694132, at *3 n.3 (D.N. Mar. I. Sept. 22, 2014), and the Restatement states that a "benefit" includes not just monetary gain, but also something that "adds to the other's security or advantage," such as "where [the person] adds to the property of another, [or] also where [the person] saves the other from expense or loss." And "benefit" need not be financial; for example, a benefit may exist "where a physician attends an insensible person who is saved subsequent pain." RESTATEMENT (FIRST) OF RESTITUTION § 1 (1937); RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 1, Rptr.'s Note a (June 2017 Update) ("Compare Restatement of Restitution § 1 (1937), which is reproduced with only a slight change of wording—in recognition of its wide influence in American law and elsewhere").

In this case, Seahorse alleges that Alvarez demanded the funds for him and his family members, and that the funds for his family would not have been given absent his demand. (Countercls. ¶¶ 48, 67.)  Some demands clearly benefitted Alvarez, such as the spending money and airfare for his annual trip to the Philippines and payment of personal expenses.  (*See id.* ¶ 48(a)-(c).)  Other funds may have gone to his family, but the allegations are sufficient for the Court to reasonably infer that he derived an advantage because his demands were met and his family members received funds that Alvarez otherwise may have had to provide with his own personal funds.

Finally, with respect to the funds directly deposited in the bank account belonging to Alvarez's daughter, again, that Alvarez allegedly demanded the funds indicates that a benefit was conferred upon him in the form of defrayed expenses he would have otherwise had to pay. Additionally, as set forth above, the Commonwealth test "does not expressly require the benefit to have been directly conferred on the defendant."  *Saipan Air,* 2014 WL 6978488, at *15. Accordingly, the first element of an unjust enrichment claim—that defendant was enriched—is satisfied.

The parties do not appear to dispute the second element—that the enrichment came at Seahorse's expense—given that Seahorse provided all of the alleged financial benefits at issue.

As to the third element, Alvarez argues that Seahorse has failed to show how his retention of the benefits was unjust, stating that the counterclaim fails to allege the benefits were "anything more than gifts bequeathed upon Plaintiff as a result of Plaintiff's personal relationship with Seahorse or as compensation for work performed by Plaintiff."  (Pl's. Mot. to Dismiss Countercls. 3.)  Seahorse does not address this argument in its opposition.  (*See* Defs'. Br. in Opp'n 2-4.)

As set forth above, the counterclaims include the following allegations: (1) Alvarez demanded these financial benefits; (2) he was compensated as a corporate officer at $35 per day; (3) he was not an employee under the FLSA; and (4) he repeatedly demanded money from Seahorse and threatened to undermine the business if he did not receive it. Taking these allegations as true, Seahorse has adequately pleaded that Alvarez was not entitled to the financial benefits received because he did not earn them and received them only after making wrongful threats to undermine the business and attempting to interfere with employees and customers. *See Monex Deposit Co. v. Gilliam*, 680 F. Supp. 2d 1148, 1163 (C.D. Cal. 2010) (investor's threats to use website to undermine relationships with potential customers was independently wrongful). Thus, Seahorse has adequately pleaded that, in these circumstances, it would be inequitable for Alvarez to retain the financial benefits not earned or wrongfully obtained at Seahorse's expense. *See, e.g., Wolk v. Green*, 516 F. Supp. 2d 1121, 1133 (N.D. Cal. 2007) (plaintiff sufficiently pleaded unjust enrichment where attorney allegedly retained funds he did not earn).

Moreover, in the complaint, Alvarez claims he was not sufficiently compensated for his work in violation of the FLSA and CNMI Wage & Hour Act. (*See generally* Compl.) In direct contradiction to the complaint, Alvarez argues in the motion to dismiss that he earned the financial benefits as compensation for his work. (Pl's. Mot. to Dismiss Countercls. 3.) Permitting him to retain the financial benefits and also seek unpaid wages would effectively permit him a "double recovery." Under these circumstances, Seahorse has sufficiently pleaded it would be inequitable for Alvarez to retain the financial benefits. *See Uthe Tech. Corp. v. Aetrium, Inc.*, 808 F.3d 755, 761 (9th Cir. 2015) ("the animating purpose of the one satisfaction rule is to prevent double recovery and unjust enrichment").

Alvarez next argues that the statute of limitations has run on some of the claims, but plaintiff has failed to specify when the alleged benefits were conferred and received.  (Pl's. Mot. to Dismiss Countercls. 3-4.)  Thus, Alvarez requests that the Court grant the motion to dismiss or entertain a motion for a more definite statement under Fed. R. Civ. P. 12(e).  (*Id.* at 4.)  Seahorse argues that the counterclaim lists years for many of the benefits at issue, and Alvarez has failed to identify the pertinent statute of limitations.  (Defs'. Br. in Opp. 4-5.)  In his reply brief, Alvarez states that although the statute of limitations is "somewhat unclear," it would be either two or six years, and therefore some of the benefits listed would be outside the statute of limitations regardless of which applied.  (Pl's. Reply Br. 2.)

An action for unjust enrichment is subject to the relevant state statute of limitations.  *See Schutte & Koerting, Inc. v. Swett & Crawford*, 298 F. App'x 613, 615 (9th Cir. 2008) (quoting *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979)).  The Commonwealth does not expressly provide a statute of limitations for this claim.  However, generally, tort claims are governed by a two-year statute of limitations.  *United Micronesia Dev. Ass'n, Inc. v. Wickline*, Case No. 14-cv-0003, 2014 WL 12708980, at *3 (D.N. Mar. I. Oct. 7, 2014) (quoting *Nw. Airlines, Inc. v. Camacho*, 296 F.3d 787, 791 (9th Cir. 2002) (interpreting 7 CMC § 2503)).  All other claims not governed by 7 CMC §§ 2502 (actions on judgment or to recover land), 2503, or 2504 (actions by or against estate of a deceased person) are subject to a six-year statute of limitations.  7 CMC § 2505; *see Bank of Saipan v. Carlsmith Ball Wichman Case & Ichiki*, Case No. 99-004, ¶ 4,5 (N. Mar. I. 1999) (describing section 2505 as a "catch-all" statute of limitations).

Whether unjust enrichment is better characterized as a tort or quasi-contract claim presents a complex question.  Different states have reached different conclusions.  For example, California and New York treat unjust enrichment as an action based in quasi-contract.  *See Continental Cas.*

*Co. v. Enodia Corp.*, 417 F. App'x 668, 670 (9th Cir. 2011) (California treats unjust enrichment as a quasi-contract claim); *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996) (noting that unjust enrichment in California and New York is action in quasi-contract). By contrast, Washington considers an action for unjust enrichment to be based in tort. *See Cota Settlement v. Eisenberg*, 593 F.3d 1031, 1041 (9th Cir. 2010) (Washington law treats unjust enrichment as a tort).

Here, Seahorse alleges that Alvarez obtained financial benefits after making demands and wrongful threats to its business. In other words, Alvarez wrongfully demanded and received property (money through payments, rent-free apartment, etc.) that rightfully belonged to Seahorse, indicating that the appropriate remedy is a return of the wrongfully obtained funds. And where monetary relief is the remedy sought, historically, the remedy was known as "quasi-contract." *See* RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 4 (2011); RESTATEMENT (FIRST) OF RESTITUTION AND UNJUST ENRICHMENT § 160 (1937); 66 Am. Jur. 2d *Restitution and Implied Contracts* § 3 (2017) ("Unjust enrichment implies a contract so that one party may recover damages from another.").

The Commonwealth Supreme Court has not decided this issue, but several Superior Court cases have found unjust enrichment to sound in quasi-contract. *See, e.g.*, *Hocog v. OKP (CNMI) Corp.*, Case No. 06-0445(R), 12 (N. Mar. I. Commw. Super. Ct. Dec. 22, 2006); *Manglona v. Tenorio*, Case No. 93-1061, 4 (N. Mar. I. Commw. Super. Ct. June 10, 2002). Consistent with these courts, this Court has suggested, by holding that the Commonwealth "would adopt the well-settled rule that a quasi-contractual claim for 'restitution' or 'unjust enrichment' will not lie where there exists a valid express contract," that a cause of action for unjust enrichment is based on quasi-contract. *See Saipan Air*, 2014 WL 6978488, at *14; *Flores v. First Haw. Bank*, Case No. 11-cv-

00022, 2012 WL 2550593, at *6 (D.N. Mar. I. Feb. 15, 2012); *Sin Ho Nam v. Quichocho*, 841 F. Supp. 2d 1152, 1175 (D.N. Mar. I. 2011).

The same rule, which bars unjust enrichment claims where there is a valid contract between the parties, applies in California, which, as discussed above, considers unjust enrichment to sound in quasi-contract. *See ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1039 (9th Cir. 2016). And the Ninth Circuit has stated that California's approach is "consistent with [the] general understanding" that unjust enrichment is "a theory upon which the remedy of restitution may be granted." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 684 (9th Cir. 2009).

Given this authority, the Court finds that the six-year statute of limitations applies to Seahorse's claim. Under Commonwealth law, the statute of limitations begins to run when the cause of action accrues. 7 CMC § 2512. "Accrue" is not defined, and there is no controlling Commonwealth precedent setting forth its meaning in the context of unjust enrichment. This Court has previously considered the meaning of the term "accrue" in the context of a medical malpractice claim, and articulated the various options for defining accrue: (1) when the injury occurs or (2) the date plaintiff discovers the injury. *See Soloviev v. Markoff*, Case No. 14-cv-00019, 2015 WL 1746242, at *4 (D.N. Mar. I. Apr. 13, 2015).

In this case, regardless of which method of measuring the date of accrual, the outcomes would be the same. Seahorse has alleged that Alvarez repeatedly demanded financial benefits, and that many of those benefits were given even though he had no right to them. In other words, Seahorse knew at the time of the injury—i.e., the conferring of the benefit on Alvarez—that he was being unjustly enriched. Thus, the Court may rely on the dates provided by Seahorse in the counterclaim to determine whether all or some of the contested benefits fall outside of the statute of limitations.

Here, Seahorse filed this counterclaim on June 24, 2016. Thus, any benefits conferred prior to June 24, 2010 fall outside the statute of limitations, and Seahorse may not recover them. Accordingly, the following benefits are clearly barred:

- $3,000 cash to pay [Alvarez's] bankruptcy attorney Loren Sutton for the filing of his Chapter 7 bankruptcy petition in 2009;
- $2,000 cash to purchase a car from the Hyatt in 2006.

(Countercls. ¶ 48(d)-(e).)

The following benefits clearly fall within the statute of limitations:

- $2,500 cash to purchase two antique cars from plaintiff's late brother in 2011;
- $1,500 cash for plaintiff's daughter's engagement gift in 2012/2013;
- $5,000 cash for his daughter's marriage gift . . . on September 9, 2013;
- Payment of plaintiff's daughter's then boyfriend's stay at the PIC Hotel for three nights in 2011/2012;
- $500 cash to pay for plaintiff's nephew to attend a mixed martial arts tournament in the mainland on November 5, 2012;
- $1,000 cash for plaintiff's leisure trip to Guam in 2015;
- Payment of $500 credit card bill of plaintiff for his personal leisure trip to Guam in 2014.

(Countercls. ¶ 48(f)-(i), (*l*)-(n).)

The remaining benefits listed either do not have dates or the dates are too imprecise for the Court to determine at this time whether they fall outside the statute of limitations. And because the current counterclaims are too "vague and ambiguous" for counterclaim-defendant to "fairly evaluate whether to assert" additional challenges to the statute of limitations," the motion for a more definite statement is granted. *Ctr. for Bio. Diversity v. U.S. Envtl. Prot. Agency*, 847 F.3d 1075, 1082 (9th Cir. 2017). Seahorse must file a more definite statement "within 14 days after notice of the order." Fed. R. Civ. P. 12(e).

Accordingly, for the reasons set forth above, Alvarez's motion to dismiss is granted in part and denied without prejudice in part.

### C. Second Cause of Action: Abuse of Process

Seahorse and Walker allege that Alvarez is liable for abuse of process because he filed this lawsuit in retaliation for being denied his request for fifty percent of the Seahorse shares, all the while knowing, and having sworn under penalty of perjury in his bankruptcy proceedings, that he was not entitled to these shares and was not an employee of Seahorse. (Countercls. ¶¶ 72-81.)

Alvarez argues that the abuse of process claim should be dismissed because Seahorse and Walker have failed to allege that the primary purpose for this lawsuit is other than to resolve a legal dispute. (Pl's. Mot. to Dismiss 5.) Seahorse and Walker argue that the abuse of process claim is based on Alvarez's demand for fifty percent of the shares in Seahorse, which he demanded despite knowing he was not entitled to them. (Defs'. Br. in Opp'n 5.) They also argue that the abuse of process claim is based on Alvarez filing this lawsuit, claiming that he was employed by Seahorse when he previously stated in his 2009 bankruptcy petition that his only work was as a self-employed fisherman. (*Id.*)

No party has cited to any CNMI case law as to the elements of an abuse of process claim, nor has this Court found any. In the absence of written law or local customary law to the contrary, "the rules of the common law, as expressed in the restatements of the law . . . shall be the rules of decision in the courts of the Commonwealth." 7 CMC § 3401. Under the Restatement (Second) of Torts, "[o]ne who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to the other for harm caused by the abuse of process." RESTATEMENT (SECOND) OF TORTS § 682 (1977). Thus, "there is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an

incidental motive of spite or an ulterior purpose of benefit to the defendant." *Id.* cmt. b. For an abuse of process claim to stand "there must be use of the process for an immediate purpose other than that for which it was designed and intended." *Id.* A typical case of abuse of process involves "one of some form of extortion, using the process to put pressure upon the other to compel him to pay a different debt or to take some other action or refrain from it." *Id.*

Here, Seahorse and Walker have stated a claim for abuse of process. In his bankruptcy petition, Alvarez stated he was "self-employed" as a fisherman (Schedule of Income, ECF No. 5-7), and that he was not an officer or shareholder in any corporation. (Stmt. of Fin. Affairs, ECF No. 5-8.) This runs counter to Alvarez's allegations in the complaint that he was an employee of Seahorse, and that "[f]or the entire time of his employment with Seahorse, [he] worked at least twelve hours per day, six days a week, and around six hours every Sunday" and only received $25 per day. (Compl. ¶¶ 14-15.)

Lying under penalty of perjury may constitute an abuse of process claim, and defendants have laid out a *prima facie* basis for such a claim. *See Sears v. Haas,* 509 F. App'x 935, 936 (11th Cir. 2013) (affirming district court's decision to dismiss plaintiff's civil rights complaint for failing to disclose all prior civil cases under penalty of perjury); *see also Rivera v. Allin,* 144 F.3d 719, 731 (11th Cir. 1998), *abrogated on other grounds*, 549 U.S. 199 (2007) (observing that lying under penalty of perjury is the type of abuse of process that warrants dismissal).

Further, because this case is before the Court on a motion to dismiss, it must take as true Walker and Seahorse's well-pleaded allegations. The allegations are that Alvarez repeatedly demanded corporate funds for his personal use, and demanded fifty percent of the shares in Seahorse despite knowing he was not entitled to them. First, they allege that no promise to give Alvarez fifty percent of Seahorse shares was ever made between the parties. Second, they allege

that in his bankruptcy petition, he denied any official role with a corporation or interest therein. Thus, Seahorse and Walker argue, their allegations and exhibits demonstrate that Alvarez is using this lawsuit to extort more money or to retaliate against them for failing to agree to his demands. Taking these allegations together, it is reasonable to infer that the primary purpose of this lawsuit is to harass or coerce Seahorse and Walker. Although the evidence eventually discovered and presented to the Court may not ultimately support the counterclaim, at this stage, the motion to dismiss is denied.

### D. Third Cause of Action: Breach of Fiduciary Duty

Seahorse alleges four breaches of fiduciary duty: (1) Alvarez reimbursed himself with company money or sought reimbursement from the company for personal expenses; (2) Alvarez directed staff to "go home" or keep the boats docked; (3) Alvarez took photographs of customers he thought were illegal workers and threatened to report that illegal activity to authorities; and (4) threatened to disrupt Seahorse's business if his stipend was not increased from $400 to $600 per week. (Countercls. ¶¶ 86-91.) Alvarez argues that the breach of fiduciary duty claim should be dismissed because Seahorse has failed to allege an injury or loss to the corporation as a result of Alvarez's alleged violations. (Pl's. Mot. to Dismiss Countercls. 5-6.)

To sustain a claim for breach of fiduciary duty, a "plaintiff must allege facts demonstrating that: 1) a fiduciary relationship exists; (2) there has been a breach of the fiduciary duty; and 3) damages resulted from the breach." *United Micronesia Dev. Ass'n, Inc.*, 2014 WL 12708980, at *4. If the breaching party is a director, a breach may occur in the following ways: (1) negligence; (2) fraudulent misappropriation of corporate property to benefit the director or a third party; (3) acquisition of any undue personal advantage, benefit, or profit; or (4) other similar conduct

sustaining injury or loss to the corporation.  *S. Seas Corp. v. Sablan,* 525 F. Supp. 1033, 1039 (D. N. Mar. I. 1981) (citing *S. Seas Corp. v. Kashiwa,* Case No. 79-0024, 4-5 (D. N. Mar. I. 1980)).

As an initial matter, the parties do not dispute that Alvarez owed a fiduciary duty to Seahorse.  And except for the claim regarding photographing customers, the parties do not dispute that a duty was breached.  Instead, they dispute whether Seahorse suffered injury due to the breach.

First, Alvarez argues that there was no injury to Seahorse from the reimbursements that he demanded or that he improperly gained by writing company checks for his personal expenses. (Pl's. Mot. to Dismiss Countercls. 6.)  Seahorse responds that any advantage or benefit he gained by wrongfully demanding or writing checks from corporate funds to cover his personal expenses is obvious.  In the reply brief, Alvarez appears to have concurred that this argument sufficiently states a breach of fiduciary duty, as he argues that "most" of this counterclaim should be dismissed, and does not raise any arguments as to this part of the counterclaim.  (*See* Pl's. Reply Br. 5-6.) The Court agrees that the injury is obvious.  Personal gain, or "a pecuniary benefit," at the expense of a corporation is an injury caused by a breach of fiduciary duty.  *See United States v. Salman,* 792 F.3d 1087, 1092 (2015) (quoting *Dirks v. S.E.C.*, 463 U.S. 646, 663 (1983)).  Seahorse alleges that Alvarez received just such a pecuniary gain at its expense.  Seahorse has therefore sufficiently pleaded injury.  *See Sablan*, 525 F. Supp. at 1039 (officer breached fiduciary duty by financing his land purchase with corporate funds).

Next, Alvarez argues that Seahorse suffered no injury due to his alleged attempts to tell employees to "go home" or to keep the boats docked.  (Pl's. Mot. to Dismiss Countercls. 6.) Seahorse claims that this alleged conduct was an "effort to sabotage and undermine the business" and to "hold the business hostage until he was paid more money," and resulted in "damages" for which it seeks "general, compensatory and nominal damages."  (Countercls. ¶ 88-89, 93; *id*. at p.

32.)  In its opposition brief, Seahorse clarifies the alleged damages, arguing that Alvarez's conduct caused injury through decreased workforce productivity and morale, and loss of company time. (Defs'. Br. in Opp'n 6.)

A breach of fiduciary duty may sound in either tort or contract, depending on the circumstances of the case.  *See Fed. Deposit Ins. Corp. v. Former Officers and Dirs. of Metro. Bank*, 884 F.2d 1304, 1307 (9th Cir. 1989); RESTATEMENT (SECOND) OF AGENCY § 401 cmt. a (1958).  The Commonwealth has not addressed this issue, but this Court predicts that in the circumstances alleged here, the Commonwealth Supreme Court would determine that the action is characteristic of a tort for purposes of assessing damages.

First, a review of other state laws, including those within the Ninth Circuit, indicates that, for purposes of damages or statute of limitations, breach of fiduciary duty is more characteristic of a tort claim when there is no express contract between the parties, and the duty arises from statutory or common law or an implied in law contract.  *See Jachetta v. United States*, 653 F.3d 898, 905 (9th Cir. 2011) (Alaska treats fiduciary duty as tort or contract depending on source of duty); *Marlys Bear Medicine v. United States ex rel. Sec'y of Dep't of Interior*, 241 F.3d 1208, 1218 (9th Cir. 2001) (Montana treats fiduciary duty as tort); *Kona Enterps., Inc. v. Estate of Bishop*, 229 F.3d 877, 886 (9th Cir. 2000) (Hawaii law treats fiduciary duty as tort or contract depending on source of duty); *Material Supply Int'l v. Chen*, 141 F.3d 1177, at *1 (9th Cir. 1998) (Table) (Oregon treats fiduciary duty as tort).

Second, as set forth above, in the absence of written law or local customary law to the contrary, "the rules of the common law, as expressed in the restatements of the law . . . shall be the rules of decision in the courts of the Commonwealth."  7 CMC § 3401.  And the Restatement of Torts and strict nature of fiduciary duty has led at least one court to conclude that a breach of

fiduciary duty action is an equitable tort. *See In re Rural Metro Corp.*, 88 A.3d 54, 98 & n.22 (Del. Ch. 2014).

Given the above authority, and no allegation that a contract exists between the parties, the fiduciary duty counterclaim is more characteristic of a tort than a contract, and damages available in tort are therefore available to Seahorse in this case. In tort claims, a plaintiff may obtain "the reasonably foreseeable harms caused by the wrong," *Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1112 (9th Cir. 2012), and includes damages "for all harm, past, present and prospective, legally caused by the tort." Restatement (Second) of Torts § 910 (1979). And the "primary characteristic of an action based upon tort type rights is the availability of compensatory remedies," including "damages for pain and suffering, emotional distress, harm to reputation, or other consequential damages." *Burns v. United States*, 76 F.3d 384, at *2 (9th Cir. 1996) (Table) (internal quotations and citations omitted).

Here, Seahorse claims it suffered damage from Alvarez's attempts to hold the business hostage and interfere with employees' work. Although Seahorse does not expressly list loss of company time or decreased morale in the counterclaim, instead specifying these damages in its opposition brief, reading the counterclaim as a whole, it is reasonable to infer that interference with employees' work that causes them delay in performing their duties adequately states an economic loss, potentially in the form of lost profits or lost business opportunities. At this stage of the litigation, these allegations are sufficient. *See Irvine Co .v. Great Amer. Ins. Co.*, 91 F.3d 152, at *2 (9th Cir. 1996) (Table) (citing *Giddings v. Indus. Indem. Co.*, 169 Cal. Rptr. 278, 281 (Cal. Ct. App. 1980)) (listing "lost profits, loss of goodwill, loss of the anticipated benefit of a bargain" as economic losses).

Next, Alvarez argues that photographing employees that he suspected to be "illegal workers" was not a breach and that Seahorse suffered no injury because this action was in the interests of the corporation. (Pl's. Mot. to Dismiss Countercls. 8.) Seahorse accurately clarifies in its brief in opposition that the counterclaim addresses customers who Alvarez claimed were illegal workers, not Seahorse's own employees. (Defs'. Br. in Opp'n 7.) In reply, Alvarez argues that because his employment was improperly handled, Seahorse may have mishandled other employees at the company. (Pl's. Reply Br. 6.)

First, Seahorse has sufficiently alleged a breach of the fiduciary duty. A corporate officer owes a "strict duty of loyalty to the corporation." *Sablan*, 525 F. Supp. at 1039. This duty requires that an officer act solely in the interest of the corporation, and not in his own interests at the expense of the corporation. *Govendo v. Mar. Pub. Land Corp.*, Case No. 90-036, 1992 WL 62888, at *3 n.5 (N. Mar. I. 1992). That Alvarez was attempting to deter customers in an attempt to benefit himself financially sufficiently alleges that he breached his duty of loyalty.

Second, Seahorse has sufficiently alleged an injury. As discussed above, an injured party may recover all past, present, and future losses that are foreseeable from the breaching officer's conduct. In this case, it is foreseeable that Seahorse would suffer economic losses from lost customers or business opportunities and loss of reputation. Because this counterclaim is based on Alvarez's conduct as to customers, not Seahorse's employees, Alvarez's argument regarding improper employment practices is irrelevant. Thus, Seahorse has stated a claim for breach of fiduciary duty.

Finally, Seahorse claims that Alvarez breached his fiduciary duties by threatening to further disrupt the business operations unless the corporation increased his weekly stipend from $400 to $600. (Countercls. ¶ 91.) Alvarez makes no mention of this in his motion to dismiss or reply brief.

However, Seahorse has failed to articulate how a threat to disrupt the business by "acting as a nuisance and filing frivolous claims" caused an injury to the business. Certainly, such a threat is unwelcome, but without additional allegations to suggest that the corporation suffered injury, this part of the claim is too speculative to survive.

Accordingly, the motion to dismiss the breach of fiduciary duty claim is granted in part and denied in part.

**E. Fourth Cause of Action: Tortious Interference with Contract**

Alvarez argues that the tortious interference with contract counterclaim must be dismissed because Seahorse has failed to allege any pecuniary losses from his conduct, and "Seahorse knows that Mr. Alvarez" failed to actually induce any employees to breach their contracts or to cause customers to cease doing business with it. (Pl's. Mot. to Dismiss Countercls. 7; Pl's. Reply Br. 6.)

The Commonwealth has adopted the Restatement (Second) of Torts on interference with contract relations and economic relations. *Lucky Dev. Co., Ltd. v. Tokai U.S.A., Inc.*, 3 N.M.I. 79, 93 (1992). Thus, to state a claim for tortious interference with contract, a plaintiff must plead the following:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

RESTATEMENT (SECOND) OF TORTS § 766 (1979). Pecuniary loss may include lost sales as a result of the breach of contract, or the expense of dealing with the repercussions of the breach. *See H.L. Hayden Co. of New York, Inc. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1024 (2d Cir. 1989) (affirming the district court's dismissal of the intentional interference with contractual relations counterclaim because counterclaimant "suffered no pecuniary loss either in the sales, since it

23

profited from them, or from the expense of tracking down the sources of Schein Dental's equipment, as this was a necessary part of enforcing the Dealership Agreement").

First, with respect to Alvarez's argument that Seahorse suffered no pecuniary harm, for the same reasons set forth in section E, this argument is unpersuasive. Interfering with employees' duties or delaying them in completion of duties may cause damages, as Seahorse claims, such as lost profits or loss of business opportunities. Similarly, dissuading customers from doing business with Seahorse may cause damage, including lost profits and business opportunities.

Second, Alvarez states that "Seahorse knows" its counterclaim is false, and is therefore nothing but speculation. But on a motion to dismiss, the well-pleaded allegations must be taken as true, and nothing in the counterclaims suggests that Seahorse does, in fact, know its claims are false. Accordingly, the motion to dismiss this cause of action is denied.

## F. Fifth Cause of Action: Intentional Interference with Prospective Economic Advantage

Alvarez argues that the intentional interference with prospective economic advantage counterclaim must be dismissed because it is conclusory, and "Seahorse fails to allege with specificity what relationships [with potential customers] were damaged and what business it lost due to Plaintiff's alleged conduct." (Pl's. Mot. to Dismiss Countercls. 7.) And Alvarez again argues that "Seahorse knows" that he "did not cause any actual customers or venders to cease doing business with Seahorse." (Pl's. Reply Br. 6.)

The Commonwealth Supreme Court treats an intentional interference with prospective economic advantage as a claim for intentional interference with performance of a contract. *Del Rosario v. Camacho,* 2001 MP 3, 18 (N. Mar. I. 2001) (citing RESTATEMENT (SECOND) OF TORTS § 766 (1979)). Thus, for this claim to survive, "[t]here must be a prospective contractual relationship between the plaintiff and a third party." *Del Rosario,* 2001 MP at 18 (citing *Kutcher*

*v. Zimmerman,* 957 P.2d 1076, 1088 (Haw. Ct. App. 1998)).  And the prospective economic advantage "must have been reasonably probable to occur, but for defendant's interference." *Id*. at 18 (citing *Youst v. Longo,* 729 P.2d 728, 733 (Cal. 1987)).

In this case, the allegations, while somewhat cursory, are not conclusory.  Seahorse has alleged how Alvarez interfered with potential customers, including "independent tour guides" (Countercls. ¶¶ 53-54, 103, 105), that he acted this way because he "knew" it would "create a perception of chaos, instability and stress that would dissuade customers from doing business with Seahorse," and that these actions "actually disrupted Seahorse's economic relationships with potential customers in that Seahorse lost business it would otherwise [] have obtained." (*Id*. ¶¶ 105, 106.)

Taking these allegations together, it is reasonable to infer that because plaintiff "knew" his conduct would create a negative perception of Seahorse, his acts were intentional and improper.  Further, the allegations that Seahorse "actually" lost business, or suffered pecuniary harm, that it "would otherwise have obtained," from customers, including tour guides, is sufficient to plead that relationships were damaged.  It is not required that Seahorse list specific customers at this stage, although it may be relevant for proving damages at trial.  That Seahorse specifies which relationships—potential customers and tour guides—is sufficient.  Moreover, by alleging that it "actually" lost potential customers and business, it is reasonable to infer that Seahorse was injured due to Alvarez's conduct.

And, for the reasons set forth above, Alvarez's argument that Seahorse knows its claims are false is unavailing.  Accordingly, the motion to dismiss is denied.

//

/

### G. Sixth Cause of Action: Conversion

Alvarez argues that the conversion claim should be dismissed. (Pl's. Mot. to Dismiss Countercls. 7.)[2] Additionally, as noted above, Alvarez argues that Walker lacks standing to assert a claim for conversion.

#### i. *Registration of Seahorse Property*

Seahorse alleges that Alvarez wrongfully registered eight water jet skis and five boats in his name even though this equipment belonged to Seahorse. Alvarez argues that the conversion claim must fail because Seahorse still controls the equipment and registration did not interfere with its ability to use the equipment. (Pl's. Mot. to Dismiss Countercls. 8.) Seahorse argues that the conversion is obvious, given that registering the vehicles in Alvarez's name "seriously interfere[d]" with their property rights. (Defs.' Brief in Opp'n 9-10.)

As this Court has previously stated, the Commonwealth Supreme Court "has generally adopted the Restatement Second of Torts' definition of conversion and relied on other state courts applying the same." *Universal Grp. Dev. Inc. v. Wanzhong Yu*, Case No. 15-cv-0002, 2015 WL 2194811, at *3 (D.N. Mar. I. May 6, 2015). Thus, conversion is "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." RESTATEMENT (SECOND) OF TORTS § 222A(1) (1965). A conversion may be committed in the following ways:

a) intentionally dispossessing another of a chattel,
b) intentionally destroying or altering a chattel in the actor's possession,
c) using a chattel in the actor's possession without the authority so to use it,
d) receiving a chattel pursuant to a sale, lease, pledge, gift or other transaction intending to acquire for himself or for another a proprietary interest in it,

---

[2] The motion to dismiss states that the requested relief is dismissal in part with a requirement that Seahorse replead with greater specificity. The actual substance and argument of the motion, however, requests only dismissal. Accordingly, the Court will treat the motion as one for full dismissal of Count VI.

e) disposing of a chattel by a sale, pledge, gift or other transaction intending to transfer a proprietary interest in it,

f) misdelivering a chattel, or

g) refusing to surrender a chattel on demand.

RESTATEMENT (SECOND) OF TORTS § 223 (1965).

A dispossession may be committed in the following ways:

a) taking a chattel from the possession of another without the other's consent, or

b) obtaining possession of a chattel form another by fraud, or

c) intentionally barring the possessor's access to a chattel, or

d) intentionally destroying a chattel while it is in another's possession.

RESTATEMENT (SECOND) OF TORTS § 221 (1965).

Here, Seahorse has alleged that it purchased the equipment with corporate funds for use and control by the business, but Alvarez registered the equipment in his own name. The submitted exhibits show that the equipment was registered with Alvarez as the "Owner." (ECF. No. 5-9.)

Registration of boats and other vehicles is done for the purpose of asserting or tracing ownership. *See Look v. Mobley*, 323 F.2d 214, 215-16 (9th Cir. 1963) (upon registration of a vehicle, the Department shall issue a certificate of ownership to the legal owner). And a vehicle owner is someone with "all the incidents of ownership including the legal title of a vehicle," such as use and ability to sell or transfer title. *See* 9 CMC § 1103(e).

Thus, that Alvarez affirmatively listed himself as the "Owner" of the equipment suggests he was attempting to acquire a legal right to ownership of the equipment, and thereby committed "an intentional exercise of dominion or control over a chattel." *See Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 601 (9th Cir. 2010) (holding registration of another's trademark was attempt to exert ownership over property); *Kremen v. Cohen*, 337 F.3d 1024, 1030 (9th Cir. 2003) (holding

that registration of third party's domain name could constitute conversion because it was attempt to obtain ownership).

Given that Alvarez is listed as the legal owner of the equipment, Seahorse may have been able to use the equipment, but it is not able to exercise "all the incidents of ownership" that it would otherwise be entitled to exercise, such as to control the sale of equipment. *See Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 142-43 (1978) (noting that property rights include "right to possess, use and dispose" of it). And the registration in Alvarez's name is directly contrary to or inconsistent with Seahorse's ownership. Thus, Seahorse has sufficiently pleaded serious interference so as to justify damages. Accordingly, Seahorse has stated a claim for conversion, and cross-defendant's motion to dismiss is denied.

### ii. Use of Toyota Tacoma

Next, Alvarez argues that the counterclaim related to the Toyota Tacoma arose only after this litigation began and therefore lacks merit, and that Seahorse intended for him to have the truck. (Pl's. Mot. to Dismiss Countercls. 8-9; Pl's. Reply Br. 7.) Walker argues that she has standing to assert a counterclaim for conversion, and that she has demanded return of the car, but Alvarez has kept it, which constitutes conversion. (Defs.' Brief in Opp'n 9-10.)

A party has standing to bring a claim if she has suffered a concrete and particularized injury in fact; there is a "causal connection between the injury and the conduct complained of"; and "it must be likely . . . that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). And "the proper plaintiff in a conversion action is one who had the right to immediate possession of the chattel at the time of the alleged conversion." *Universal Grp. Dev. Inc.*, 2015 WL 2194811, at *3 (quoting *Universal Mktg. & Entrn't, Inc. v. Bank One of Ariz. N.A.*, 53 P.3d 191, 193-94 (Ct. App. Ariz. 2002)).

Here, Walker alleges that she owns the Toyota Tacoma in dispute, and provided a Bureau of Motor Vehicle Certificate of Ownership. (Countercls. ¶ 118; ECF. No. 5-10.) She also alleges that Alvarez "exercised control" over the vehicle by driving it without her permission.[3] In sum, Walker had the right to immediate possession and use of the vehicle at the time of the alleged conversion. The injury in fact is loss of control of the vehicle while Alvarez allegedly took and drove it. His actions directly caused the alleged harm, which is substantial interference with her ability to possess and use the vehicle. A favorable judgment against Alvarez would redress the harm, either through monetary compensation for loss of the vehicle or a return of the vehicle. Accordingly, these allegations and the Certificate of Ownership sufficiently establish that Walker has standing to pursue this counterclaim.

Here, Walker has alleged that she has been denied use of her vehicle due to Alvarez continuing to drive it without her permission. Conversion "may include misuse or abuse of property" and "use in an unauthorized manner or [] an unauthorized extent of property placed in one's custody for limited use." *Dowling v. United States*, 473 U.S. 207, 231 (1985). Thus, even if it were true that she intended for him to have the truck for a period of time, given that she has sufficiently pleaded that she is the owner, Alvarez may be subject to liability for conversion on the grounds that she demanded its return and he refused to return it. *See id.*; RESTATEMENT (SECOND) OF TORTS §§ 228 (exceeding authorized use of chattel can constitute conversion), 237 (conversion by refusal to surrender chattel after demand) (1965). Thus, Walker has sufficiently pleaded that Alvarez, by driving the car despite knowing he lacks permission to do so, has exercised control

---

[3] Seahorse and Walker also allege that Alvarez registered the Toyota Tacoma in his name. (Countercls. ¶ 65.) However, they do not appear to pursue this avenue regarding the vehicle in the actual conversion claim, arguing instead that he drove the vehicle without permission. Accordingly, the Court declines to address this allegation as part of the counterclaim.

over the vehicle and seriously interfered with her right to use it.  Accordingly, she has stated a claim for conversation, and the motion to dismiss this claim is denied.

### H.  Seventh Cause of Action: Declaratory Judgment

Alvarez argues that the counterclaim for a declaratory judgment to determine ownership rights to the property at issue in the conversion counterclaim should be dismissed because it is a remedy, not a cause of action.  (Pl's. Mot. to Dismiss Countercls. 9.)  Seahorse and Walker do not dispute this point, but instead argue that the sole case cited by Alvarez fails to support the relief being sought.  (Opp'n 10.)  Alvarez concedes the case provided was an incorrect citation, and offers a different case in support of his argument, *Universal Development, Inc. v. Wanzhong Yu*, Case No. 15-cv-0002, 2015 WL 2194811, at *2 n.5 (D. N. Mar. I. May 6, 2015) ("[d]eclaratory and injunctive relief are remedies, not causes of action") (internal citation omitted).

A declaratory judgment offers parties "a means by which rights and obligations may be adjudicated in cases . . . involving an actual controversy that has not reached a stage at which either party may seek a coercive remedy and in cases where a party who could sue for coercive relief has not yet done so."  *Seattle Audubon Soc'y v. Moseley*, 80 F.3d 1401, 1405 (9th Cir. 1996) (citing 28 U.S.C. § 2201; WRIGHT & MILLER, FED. PRAC. & PROC.: CIV. 2D § 2571, 569).  Thus, in cases where a federal court would otherwise have jurisdiction, a court may "allow earlier access to federal courts in order to spare potential [litigants] from the threat of impending litigation."  *Id.* (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667 (1950); WRIGHT & MILLER at 569-70).

"Declaratory judgment actions are justiciable if there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Seattle Audubon Soc'y*, 80 F.3d at 1405 (quoting *Nat'l Basketball*

*Ass'n v. SDC Basketball Club*, 815 F.2d 562, 565 (9th Cir. 1987)).  A district court has "unique and substantial discretion in deciding whether to declare the rights of litigants," and "the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1232 (9th Cir. 1998) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 288 (1995)).

In this case, Seahorse and Walker have also alleged a counterclaim for conversion.  As set forth above, resolution of the conversion counterclaim will resolve all ownership questions regarding the same property at issue in the request for a declaratory judgment.  "Although the existence of another adequate remedy does not *preclude* a judgment for declaratory relief . . . the availability of other adequate remedies *may* make declaratory relief inappropriate." *United Safeguard Distrib. Ass'n, Inc. v. Safeguard Bus. Sys., Inc.*, 145 F. Supp. 3d 932, 960-61 (C.D. Cal. 2015) (internal citations and quotations omitted).  Thus, where one claim may resolve the questions raised in the declaratory judgment action, the latter may be unnecessarily duplicative.  Such is the case here.

Moreover, Seahorse and Walker do not allege facts to show that there is a "sufficient immediacy" requiring judicial intervention in addition to the claim for conversion.  And their request does not serve the objectives of the Declaratory Judgment Act—to prevent additional litigation and efficiently use judicial resources—but instead seeks yet another "remedial measure to address previously alleged" causes of action for conversion. *Id.* at 961; *see also Takeda Pharm. Co., Ltd. v. Mylan Inc.*, 62 F. Supp. 3d 1115, 1127 (N.D. Cal. 2014) (declining to issue declaratory judgment where claim was duplicative of patent infringement claim that offered adequate relief); *Sentinel Ins. Co., Ltd. v. Tzion*, Case No. 15-cv-00208, 2017 WL 1197108, at *8 (D. Ariz. Mar.

31, 2017) (suggesting declaratory judgment may be inappropriate because the order adjudicated the parties' ownership rights in the conversion claim).

Accordingly, the motion to dismiss the counterclaim for a declaratory judgment is granted.

## VI. CONCLUSION

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART counterclaim-defendant Alvarez's motion to dismiss the counterclaims. (ECF No. 8.)

It is hereby ORDERED that the first (unjust enrichment), third (breach of fiduciary duty), fourth (tortious interference with contract), fifth (intentional interference with prospective economic advantage), and part of the sixth (conversion) causes of action as to counterclaim-plaintiff Walker are dismissed with prejudice.

It is further ORDERED that the first cause of action (unjust enrichment) is dismissed in part with prejudice and part without prejudice, part of the third cause of action (breach of fiduciary duty) is dismissed with prejudice, and the seventh cause of action (declaratory judgment) is dismissed with prejudice as to counterclaim-plaintiff Seahorse.

Counterclaim-plaintiffs Seahorse and Walker may proceed with the second (abuse of process) and sixth (conversion) causes of action. Counterclaim-plaintiff Seahorse may proceed with the remaining portions of the first (unjust enrichment) and third (breach of fiduciary duty) causes of action, and with the fourth (tortious interference with contract) and fifth (intentional interference with prospective economic advantage) causes of action.

///

//

/

Counterclaim-plaintiffs are also ORDERED to submit a more definite statement regarding the surviving parts of their first cause of action within fourteen (14) days of receiving notice of this Order.

IT IS SO ORDERED.

Dated this 8th of September, 2017.

_____
RAMONA V. MANGLONA
Chief Judge